UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

AQKINO WRIGHT,

    Plaintiff,

v.                                                       Case No:   8:18-cv-444-T-DNF

NANCY BERRYHILL, ACTING
COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____

## OPINION AND ORDER

Plaintiff, Aqkino Wright, seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for Supplemental Security Income ("SSI"). The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda setting forth their respective positions. For the reasons set out herein, the decision of the Commissioner is **REVERSED AND REMANDED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

    **I.**    **Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision**

    **A. Social Security Act Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The

impairment must be severe, making the claimant unable to do his previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382(a)(3); 20 C.F.R. §§ 404.1505-404.1511, 416.905-416.911.

### B. Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405 (g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Martin v. Sullivan*, 894 F.2d 1329, 1330 (11th Cir. 2002); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). However, the District Court will reverse the Commissioner's decision on plenary review if the decision applied incorrect law, or if the decision fails to provide sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). The Court reviews de novo the conclusions of law made by the Commissioner of Social Security in a disability benefits case. Social Security Act, § 205(g), 42 U.S.C. § 405(g).

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At step one, the claimant must prove that he is not undertaking substantial gainful employment. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), *see* 20 C.F.R. §

404.1520(a)(4)(i). If a claimant is engaging in any substantial gainful activity, he will be found not disabled. 20 C.F.R. § 404.1520(a)(4)(i).

At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments. *Doughty*, 245 F.3d at 1278, 20 C.F.R. § 1520(a)(4)(ii). If the claimant's impairment or combination of impairments does not significantly limit his physical or mental ability to do basic work activities, the ALJ will find that the impairment is not severe, and the claimant will be found not disabled. 20 C.F.R. § 1520(c).

At step three, the claimant must prove that his impairment meets or equals one of impairments listed in 20 C.F.R. Pt. 404, Subpt. P. App. 1; *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(iii). If he meets this burden, he will be considered disabled without consideration of age, education and work experience. *Doughty*, 245 F.3d at 1278.

At step four, if the claimant cannot prove that his impairment meets or equals one of the impairments listed in Appendix 1, he must prove that his impairment prevents him from performing his past relevant work. *Id*. At this step, the ALJ will consider the claimant's RFC and compare it with the physical and mental demands of his past relevant work. 20 C.F.R. § 1520(a)(4)(iv), 20 C.F.R. § 1520(f). If the claimant can still perform his past relevant work, then he will not be found disabled. *Id*.

At step five, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work available in the national economy, considering the claimant's RFC, age, education, and past work experience. *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(v). If the claimant is capable of performing other work, he will be found not disabled. *Id*. In determining whether the Commissioner has met this burden, the ALJ must develop a full and fair record regarding the vocational opportunities available to the claimant. *Allen v. Sullivan*, 880 F.2d 1200,

1201 (11th Cir. 1989). There are two ways in which the ALJ may make this determination. The first is by applying the Medical Vocational Guidelines ("the Grids"), and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004). Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he is not capable of performing the "other work" as set forth by the Commissioner. *Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

**C. Procedural History**

Plaintiff protectively filed an application for SSI on February 13, 2014, alleging disability beginning December 1, 2013. (Tr. 70, 178-83, 219). Plaintiff's application was denied initially on June 4, 2014, and upon reconsideration on August 25, 2014. (Tr. 94-96, 101-05). Plaintiff requested a hearing, and, on May 2, 2016, an administrative hearing was held before Administrative Law Judge Margaret Craig (the "ALJ"). (Tr. 34-68). On November 4, 2016, the ALJ entered a decision finding Plaintiff not disabled. (Tr. 14-33). Plaintiff requested review of the decision and the Appeals Council denied Plaintiff's request on December 19, 2017. (Tr. 1-6). Plaintiff initiated the instant action by filing a Complaint (Doc. 1) on February 2, 2018. The parties having filed memoranda setting forth their respective positions, this case is ripe for review.

**D. Summary of the ALJ's Decision**

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 13, 2014, the application date. (Tr. 19). At step two, the ALJ found that Plaintiff had the following severe impairments: borderline intellectual functioning; anxiety disorder, nos; and depressive disorder, nos. (Tr. 19). At step three, the ALJ found that through the date last insured, Plaintiff did not have an impairment or combination of

impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 20).

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to:

> perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can engage in simple, routine tasks; the claimant can have occasional contact with coworkers, superiors, and the general public; the claimant must work in a work environment with little or gradual workplace changes.

(Tr. 23). At step four, the ALJ found that Plaintiff has no past relevant work. (Tr. 26)

At step five, the ALJ found that considering Plaintiff's age, education, work experience and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed. Relying on the testimony of a vocational expert, the ALJ found that Plaintiff could perform the work requirements of such jobs as coach cleaner, kitchen helper, and laundry laborer. (Tr. 27). The ALJ concluded that Plaintiff was not under a disability since February 13, 2014, the date Plaintiff's application was filed. (Tr. 27).

## II. Analysis

Plaintiff raises a single issue on appeal: whether the ALJ erred by finding that Plaintiff did not meet Listing 12.05 (intellectual disability). Plaintiff argues that the ALJ improperly weighed the opinion of consultative psychological examiner, Lawrence N. Pasman, Ph.D., who opined that Plaintiff had a full-scale IQ score of 59 and that Plaintiff's ability to sustain attention, concentration, and exert mental control is in the extremely low range, and his ability in processing simple or routine visual material without making errors in the extremely low range when compared to his peers. Plaintiff argues that contrary to the ALJ's claim, the validity of the IQ score was discussed and there was no indication of malingering. Further, Plaintiff argues that the ALJ

implicitly found that Plaintiff had additional and significant work related limitations given the determination that Plaintiff had moderate limitations in social functioning.

In response, Defendant argues that Plaintiff does not have a valid full-scale IQ of 59 or less and, thus, has failed to satisfy the criteria of subsection B. Plaintiff argues that the ALJ properly rejected Dr. Pasman's finding that Plaintiff had a full-scale IQ score of 59. Further, Plaintiff argues that even if Plaintiff had a full-scale IQ score of 59, Plaintiff failed to meet the requirements of the introductory paragraph to Listing 12.05 and evidence relating to Plaintiff's daily life undermines the finding that Plaintiff meets Listing 12.05.

At step three, the claimant must prove that her impairment meets or equals one of impairments listed in 20 C.F.R. Pt. 404, Subpt. P. App. 1; *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(iii). To meet a listing,

> a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement. To "equal" a Listing, the medical findings must be "at least equal in severity and duration to the listed findings."

*Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002)(citations omitted); *see* 20 C.F.R. §§ 404.1525, 404.1526; *Wilkinson o/b/o Wilkinson v. Bowen*, 847 F.2d 660, 662 (11th Cir. 1987). A claimant's impairments must meet or equal all of the specified medical criteria in a particular listing for the claimant to be found disabled at step three of the sequential evaluation process. *See Sullivan v. Zebley*, 493 U.S. 521, 530-32 (1990).

To qualify under Listing 12.05, a claimant must first meet the diagnostic criteria in Listing 12.05's introductory paragraph. The claimant must show that he has (i) significantly subaverage general intellectual functioning (ii) with deficits in adaptive functioning (iii) that manifested before age twenty-two. *Rodriguez v. Comm'r of Soc. Sec.*, 633 F. App'x 770, 773 (11th Cir. 2015) (citing

*Crayton v. Callahan,* 120 F.3d 1217, 1219 (11th Cir.1997); 20 C.F.R. Pt. 404, Subpt. P, App'x 1, §§ 12.00(A), 12.05. A valid IQ score of below 70 creates a rebuttable presumption that a claimant manifested deficits in adaptive functioning before age twenty-two. *Id.* citing *Hodges v. Barnhart,* 276 F.3d 1265, 1268–69 (11th Cir.2001).

Second, a claimant must meet the specific severity requirements of one of four subparagraphs, A through D. 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.05. Listing 12.05(B) requires a claimant to have "a valid verbal, performance, or full scale IQ of 59 or less." *Id.* § 12.05(B). Listing 12.05(C) requires a claimant to show: (1) a valid verbal, performance, or full scale IQ of 60 through 70; and (2) a physical or other mental impairment imposing an additional and significant work-related limitation of function. *Id.* § 12.05(C).

In this case, upon review of the record and the ALJ's decision, the Court determines that the ALJ erred by failing to properly evaluate whether Plaintiff met Listing 12.05. In her decision, while analyzing whether Plaintiff met a listing, the ALJ explained that she rejected Dr. Pasman's full-scale IQ score of 59 as follows:

> As for the "paragraph B" criteria, they are not met because the claimant does not have a valid, verbal, performance, or full scale IQ of 59 or less. During a consultative examination with Dr. Pasman the claimant's cognitive functioning was evaluated as he was administered, the WAIS-IV and the results were consistent with a full-scale IQ score of 59 (Exhibit 10F, page 6). **Although the claimant earned a full-scale IQ score of 59, Dr. Pasman did not comment or address the validity of this score. To that end, the undersigned has rejected this score,** and further, finds the evidence does not support diminished level of alertness, and other challenges typically associated with such a score.

(Tr. 22) (emphasis added). However, as Plaintiff notes and Defendant admits, Dr. Pasman did address the validity of Plaintiff's IQ score, specifically finding that

> No behavior suggestive of malingering was observed. Based on the consistency between information from the self-report, information from other sources, and the behavioral observations of the examiner, the

> information obtained during the interview is believed to be reliable. The results of the examination are felt to be reliable and valid.

(Tr. 398). Thus, the ALJ was factually incorrect when she found that Dr. Pasman did not address the validity of the IQ score determination.

Defendant contends that even though the ALJ was factually wrong, the error was harmless because the ALJ gave other reasons for rejecting Dr. Pasman's IQ score, namely the testimony of the medical expert Richard M. Anderson, Ph.D. (Doc. 24 p. 8). At the administrative hearing, Dr. Anderson opined that Dr. Pasman's testing was not an accurate reflection of Plaintiff's full-scale IQ. (Tr. 26, 39). Dr. Anderson explained that there were "very low scores achieved on the symbol search and coding tests, which made a very low processing speed score," which "effectively lowered the overall—the Full Scale IQ—considerably, which I guess was counted for the Full Scale IQ of 59, which I feel is low compared with the other visual more performance skills." (Tr. 39, 403). Dr. Anderson testified that the score of 59 was not valid and that Plaintiff was capable of handling more than very basic simple tasks, even possibly complex tasks. (Tr. 42-43). In her decision, the ALJ accorded some weight to Dr. Anderson's opinion, apparently accepting Dr. Anderson's finding that Dr. Pasman's IQ score was not accurate. (Tr. 25-26).

The Court rejects Defendant's argument. The ALJ did not fairly consider the opinion of Dr. Pasman and Dr. Anderson, but rather analyzed their opinions under the mistaken assumption that Dr. Pasman had not considered the validity of Plaintiff's IQ score. If the ALJ had properly recognized that Dr. Pasman specifically addressed the question of the validity of the score, it is possible that the ALJ may have given more weight to the findings of the in-person examiner Dr. Pasman, rather than to the testimony of a medical expert that merely reviewed the file. In any event, the uncertainty underscores the importance of the ALJ accurately understanding Dr. Pasman's opinion.

Further, the Court also rejects Defendant's argument that even if Dr. Pasman's IQ score is valid, Plaintiff failed to meet Listing 12.05 because he did not satisfy the additional requirements found in the diagnostic description in the introductory paragraph of the listing. In support of this argument, Defendant contends that the ALJ made numerous "implicit" findings demonstrating the ALJ found that the introductory paragraph criteria were not met. Given the ALJ's error in addressing Dr. Pasman's opinion, the Court is unpersuaded by such "implicit" findings. On appeal, the ALJ shall directly address whether Plaintiff meets Listing 12.05, directly analyzing whether the introductory paragraph criteria are met. Further, the ALJ shall reevaluate Dr. Pasman's IQ score determination, properly taking into account Dr. Pasman's finding that the score were reliable and valid.

### III. Conclusion

The decision of the Commissioner is **REVERSED AND REMANDED**. The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on February 22, 2019.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties